**Israel WILLIAMS, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 01–06–00037–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 15, 2007.

Crespin Michael Linton, Houston, for Appellant.

William J. Delmore III, Asst. District Atty., Houston, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HIGLEY.

## OPINION

SAM NUCHIA, Justice.

Appellant, Israel Williams, was charged by indictment with the offense of aggravated assault with two enhancements, and a jury found him guilty as charged. Appellant pleaded true to the enhancements, and the trial court found the enhancements true and assessed punishment at imprisonment for 35 years. In two points of error, appellant (1) challenges the legal and factual sufficiency of the evidence to support his conviction and (2) complains that the charge to the jury erroneously included a definition of "reckless" as a culpable mental state. We affirm.

## BACKGROUND

According to the trial testimony of Wayne Lindsey and Joe Rogers, on the evening of August 9, 2005 and into the early morning of August 10, Lindsey, appellant, a man identified only as Popcorn, and Rogers were on the front porch of a house on Brewster Street in Houston. The house was rented by Lindsey's business partner, Joe Rosemond, who then rented rooms to others or allowed others to stay in the house. Lindsey stayed there occasionally, although he lived elsewhere with his mother. He worked at the house as a mechanic and brought cars there every day.

During that evening, Lindsey and Rogers drank beer and wine and smoked some rocks of cocaine. Lindsey also smoked marijuana, but Rogers smoked only cocaine. During part of the evening, appellant joined Lindsey and Rogers in their alcohol and drug use. Appellant and Popcorn had come to the house to get haircuts from a young woman who met them there. Lindsey was supposed to tell Popcorn that Rosemond did not want Popcorn at the house because he was too noisy, but Rosemond came by and told Popcorn to leave. Popcorn left, and appellant was angry at Lindsey. Appellant and Lindsey argued, and Lindsey "touched" appellant on the shirt. However, both Lindsey and Rogers testified that Lindsey did not hit or push appellant.

After appellant got his haircut, he left and was gone for 15 or 20 minutes. When he returned, he and Lindsey exchanged more words, and appellant pulled out a handgun and shot Lindsey, who was sitting in a chair on the porch, in the knee. Rogers testified that, before appellant fired the handgun, he told Rogers to "stay back." After firing the gun, appellant left the vicinity. Someone called for an ambulance.

J. Owens, a Houston Fire Department Emergency Medical Technician responded to the call. He testified that Lindsey seemed normal and was very coherent. Owens testified that Lindsey did not appear to be intoxicated, although Owens did smell alcohol in the area.

Appellant's testimony differed from that of Lindsey and Rogers in some details. Appellant testified that he went to the house after he got off work at about 7:30 or 8:00 p.m. He went to his room and stayed there until Popcorn came with a young woman, Jen, who was to cut appellant's hair. Lindsey, who was on the porch with Rogers, said Jen could not cut hair in the house, so Jen and appellant went to the porch for the haircut. Lindsey and Rogers moved into the living room. Jen used an electrical outlet in the living room for her electric clippers, which repeatedly came unplugged. Jen and Lindsey argued about the cause of the disconnections. After the haircut, appellant used the bicycle to take Jen to a bus stop, then returned to the house to get a bowl for food. When he came out of the house, the bicycle was gone, and Lindsey told him that he could not use the bicycle. Appellant and Lindsey argued, and Lindsey came off the porch, grabbed appellant by the shirt, and hit him two times on the shoulder. Appellant pulled away and walked to the place where he was to get food, but all the food had been given away. He returned to the house and found Lindsey and Rogers still on the porch, drinking wine. Lindsey told appellant that he could not sleep at the house that night. Lindsey started to get up from his chair, and appellant drew his pistol and fired it. Appellant testified that he was not aiming at Lindsey, but was trying to make sure that appellant got away because Lindsey had hit him once before, and appellant was in fear for his life. Appellant also testified

that Lindsey and Rogers were intoxicated as a result of their alcohol and drug use.

## DISCUSSION

### 1. Sufficiency of the Evidence

In his first point of error, appellant contends that the evidence is legally and factually insufficient to support his conviction for aggravated assault. Appellant argues that (1) the State did not prove that appellant intentionally caused serious bodily injury and (2) the State did not prove that appellant did not shoot Lindsey in self-defense.

### A. Standard of Review

■ In reviewing the evidence on legal sufficiency grounds, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000).

■ When conducting a factual-sufficiency review, we view all of the evidence in a neutral light. *Cain v. State*, 958 S.W.2d 404, 408 (Tex.Crim.App.1997). We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). Under the first prong of *Johnson*, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the evidence before us, we would have voted to acquit had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App.2006). Under the second prong of *Johnson*, we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* Before determining that evidence is factu-

ally insufficient to support a verdict under the second prong of *Johnson*, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In conducting a factual-sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *See Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

■ We may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). The fact-finder alone determines what weight to place on contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of credibility and demeanor. *Cain*, 958 S.W.2d at 408–09. As the determiner of the credibility of the witnesses, the fact-finder may choose to believe all, some, or none of the testimony presented. *Id.* at 407 n. 5.

■ Under both legal and factual sufficiency, the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 671 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). The jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986). This standard of review applies to both direct and circumstantial evidence cases. *King v. State*, 29 S.W.3d 556, 565 (Tex.Crim.App. 2000).

### B. Assault

■ Appellant's indictment for aggravated assault charged that he "did then and there unlawfully, intentionally and knowingly cause bodily injury to Wayne

Lindsey by using a deadly weapon, namely, a firearm." A person commits the offense of assault "if the person: (1) intentionally [or] knowingly ... causes bodily injury to another...." TEX. PEN.CODE ANN. § 22.01(a) (Vernon Supp.2006). A person commits the offense of aggravated assault if the person commits assault and "(1) causes serious bodily injury to another ...; or (2) uses or exhibits a deadly weapon during the commission of the assault." TEX. PEN.CODE ANN. § 22.02(a) (Vernon Supp.2006).

■ Appellant first complains that the State did not prove that he "intentionally caused serious bodily injury." We note that the State was not required to prove that appellant caused *serious* bodily injury. The indictment simply alleged that appellant caused bodily injury, and the Penal Code does not require "serious" bodily injury when a deadly weapon is used or exhibited. *See id.* Appellant admitted that he fired his handgun and does not contest that Lindsey was shot in the knee as a result of appellant's action. However, he argues that he did not intend to injure Lindsey and that he fired in self-defense because he feared for his life when Lindsey began to rise out of the chair. These arguments are not made in the alternative.

The State presented evidence that appellant and Lindsey argued, that Lindsey touched appellant on the chest during that argument, that appellant left the house and returned 15 or 20 minutes later, at which time he pulled a handgun and shot Lindsey in the knee. This evidence, when viewed in the light most favorable to the prosecution, is sufficient to enable a rational jury to find, beyond a reasonable doubt, the essential elements of aggravated assault. Thus, the evidence is legally sufficient to support the jury's verdict of guilty.

Appellant testified that, when he fired the handgun, he was not aiming at Lindsey and only wanted to make sure he got away because Lindsey had hit him earlier. However, Rogers testified that appellant told him to "stay back" before firing the gun, and that Lindsey did not hit appellant. The jury was not required to believe appellant's testimony. The jury could have believed that appellant's return to the house after he and Lindsey had argued, telling Rogers to stay back, and firing the handgun were evidence of appellant's intent to harm Lindsey. The evidence, viewed in a neutral light, is not so weak that the verdict is clearly wrong and manifestly unjust, nor is the verdict against the great weight and preponderance of the evidence. Therefore, the evidence is factually sufficient to support the jury's verdict.

### B. Self-defense

■ Appellant also argues that the State did not prove that appellant did not shoot Lindsey in self-defense. Appellant correctly notes that the State has the burden of persuasion, not the burden of production, in disproving self-defense. *See Saxton v. State,* 804 S.W.2d 910, 913–14 (Tex.Crim.App.1991) (stating that State is not required to affirmatively produce evidence refuting self-defense claim). The burden of persuasion requires only that the State prove its case beyond a reasonable doubt. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App.2003). Self-defense is an issue of fact for the jury to determine. *Saxton,* 804 S.W.2d at 913. "A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory." *Id.* at 914.

■ In a review of the legal sufficiency of the evidence to support the jury's rejection of a self-defense theory, in addition to our usual review for legal sufficiency of the evidence, we ask whether any rational jury would have found, beyond a reasonable doubt, against appellant on the self-de-

fense issue. *Id.* In a factual sufficiency review, we review all of the evidence in a neutral light to determine whether the State's evidence, taken alone, is too weak to support the jury's finding and whether the proof of guilt is against the great weight and preponderance of the evidence. *Zuliani v. State,* 97 S.W.3d 589, 595 (Tex. Crim.App.2003).

We have previously determined that the evidence was legally sufficient to support the jury's finding of guilty. The only evidence to support appellant's defense of self-defense was appellant's testimony that Lindsey had assaulted him earlier in the evening and that he was afraid for his life when Lindsey began to rise from his chair. However, the jury was entitled to believe the controverting testimony of Lindsey and Rogers that Lindsey did not assault appellant and that Lindsey did not begin to rise from his chair. Furthermore, the jury could have believed that appellant's return to the house with a handgun after allegedly being assaulted by Lindsey negated appellant's claim of self-defense. Thus, a rational jury could have found against appellant, beyond a reasonable doubt, on the self-defense issue.

In addition, viewing all the evidence in a neutral light, including appellant's testimony in support of his self-defense claim, we conclude that the State's evidence is not too weak to support the jury's implied finding against appellant's self-defense issue. Moreover, in weighing appellant's contradictory claims of reckless, non-intentional acts and self-defense against the State's evidence, we conclude that the jury's finding is not against the great weight and preponderance of the evidence.

Accordingly, we overrule appellant's first point of error.

## 2. Jury Instruction on "Reckless"

In his second point of error, appellant contends that the trial court erred in de-

nying his request to remove the term "reckless" from the jury instruction for aggravated assault. At the court's charge conference, counsel for appellant stated the following objection:

> My objection is that the Court has included in the charging paragraph on aggravated assault a culpable mental state of recklessly. It's our position that this culpable mental state was not alleged in the indictment, and it is not a lesser included offense because it is the same degree of offense for someone who recklessly caused bodily injury. So, I would object to the lesser included offense [sic] of recklessly being included in the charge because it is not included, not alleged in the indictment.

The trial court sustained the objection, then stated that "the Court has removed that instruction from the charge." In the charge that was submitted to the jury, among the definitions and following the definitions of "intentionally" and "knowingly," was the following:

> A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise as viewed from the defendant's standpoint.

The application paragraphs, which followed, did not refer to recklessness or reckless acts in any way.

A review of charge error involves a two-step analysis. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App. 1994). First, we must determine whether there is error in the charge, and, second,

we must determine whether any resulting harm requires reversal. *Id.* If the error was the subject of a timely objection, we must reverse unless the error was harmless. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). But, if there was no timely objection, we reverse only if the resulting harm was egregious, that is, if the error prevented appellant from having a fair and impartial trial. *Id.* The appellant has the burden to show that he suffered actual harm as a result of the charging error. *Abdnor,* 871 S.W.2d at 732. We conclude that the trial court erred by including, in the abstract portion of the charge, the definition of "recklessly." *See Medina v. State,* 7 S.W.3d 633, 639 (Tex.Crim.App.1999) (treating abstract definition of "knowingly" as error, but not egregious because not in application paragraph).

In this case, appellant objected to the "charging paragraph," and the trial court sustained the objection and removed the reference to "recklessly" causing bodily injury from the application paragraph. However, appellant did not specifically object to the definition of "reckless" or "acting recklessly." Therefore, appellant did not preserve this complaint, and we review any error for egregious harm.

Appellant concedes that the term "recklessly" is not used in the application paragraph of the charge, but contends that including the definition of the term is enough to suggest to a jury that it could find him guilty of aggravated assault if it found that his actions were reckless. Appellant cites *Reed v. State,* 117 S.W.3d 260 (Tex.Crim.App.2003), to support this contention. However, in *Reed,* the trial court included the term "recklessly" in the application paragraph over the appellant's objection that the term was not in the indict-

ment. *Id.* at 261. The Court of Criminal Appeals concluded that the inclusion of the term "recklessly" could lead the jury to convict the defendant for an offense that was not in the indictment and held that the trial court's inclusion of the term improperly broadened the indictment. *Id.* at 265. The holding in *Reed* does not apply to the present case.

"The harmfulness of error in a jury charge should be measured, at least in part, against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of the charge." *Atkinson v. State,* 923 S.W.2d 21, 27 (Tex.Crim.App.1996). Here, although the jury was given the definition of "recklessly," it was authorized to find appellant guilty of aggravated assault only if it found that he "intentionally or knowingly" caused bodily harm to Lindsey. We presume that the jury followed this instruction. *See Luquis v. State,* 72 S.W.3d 355, 366 (Tex.Crim.App.2002) (presuming that jury followed instruction not to consider parole and good conduct time). Appellant does not direct us to any evidence that the jury did not follow the instructions in the application paragraph, and our review of the record reveals none. Furthermore, no reference to any act by appellant as reckless was made during the trial or in closing arguments by either the State or appellant.[1] When the application paragraph correctly instructs the jury, a superfluous abstract definition is not egregious. *Medina v. State,* 7 S.W.3d 633, 640 (Tex.Crim.App.1999) (citing *Plata v. State,* 926 S.W.2d 300, 302–03 (Tex.Crim.App.1996)).

We hold that appellant has not met his burden of showing egregious harm. We further hold that the trial court's inclusion

---

**1.** However, in his appellate brief, appellant argues that he was, in fact, reckless and

therefore did not shoot Lindsey intentionally or knowingly.

of the definition for the term "reckless" in the abstract portion of the charge to the jury was harmless error.

Accordingly, we overrule appellant's second issue.

## CONCLUSION

We affirm the judgment.